IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JOHN HAGERTY, personal representative for estate of William Hagerty and trustee for wrongful death claim beneficiaries; LARRY KINS, personal representative for estate of Lillian Kins and trustee for wrongful death claim beneficiaries; KATHY PELTIER, personal representative for estate of Richard Peltier and trustee for wrongful death claim beneficiaries; MARGARET WRIGHT (deceased) and ELISABETH BURRELL, personal representatives for estate of Andrew Wright and trustee for wrongful death claim beneficiaries,<br><br>               Plaintiffs,<br><br>vs.<br><br>ALEX AZAR, Secretary, U.S. Department of Health & Human Services,<br><br>               Defendant. | CV 19–123–M–DWM<br><br><br>OPINION<br>and ORDER |

Plaintiffs challenge the Department of Health and Human Service's ability to recover Medicare conditional payments from Montana wrongful death settlements pursuant to the Medicare Secondary Payer statute, 42 U.S.C.

1

§ 1395y(b)(2)(B)(ii).  Having reviewed the parties' filings and heard argument,

summary judgment is granted in favor of the Department.

**BACKGROUND**

## I.    Medicare

Medicare is a federal entitlement program that provides health insurance to

qualified elderly and disabled individuals.  *See* 42 U.S.C. §§ 1395 *et seq*.  When

first enacted, Medicare was the primary payer for medical services for

beneficiaries, even when the same services were covered by other insurers.

*Zinman v. Shalala*, 67 F.3d 841, 843 (9th Cir. 1995).  Responding to increasing

Medicare costs, Congress enacted the Medicare Secondary Payer statute in the

1980s, which positioned Medicare as the secondary payer to other forms of

overlapping coverage.  *Id.*; 42 U.S.C. § 1395y(b).  Under the Secondary Payer

statute, when a Medicare recipient suffers an injury covered by another policy,

such as liability or automobile insurance or workers' compensation, Medicare will

conditionally pay the Medicare recipient's medical expenses, but will seek

reimbursement from any settlement the Medicare recipient later receives.  42

U.S.C. § 1395y(b)(2)(B).  The statute provides:

> a primary plan, and an entity that receives payment from a primary plan,
> shall reimburse the appropriate Trust Fund for any payment made by
> the Secretary . . . with respect to an item or service if it is demonstrated
> that such primary plan has or had a responsibility to make payment with
> respect to such item or service.  A primary plan's responsibility for such
> payment may be demonstrated by a judgment, a payment conditioned

2

upon the recipient's compromise, waiver, or release (whether or not
there is a determination or admission of liability) of payment for items
or services included in a claim against the primary plan or the primary
plan's insured, or by other means.

*Id.* § 1395y(b)(2)(B)(ii).

Medicare asserts its right to recover by having a designated Medicare

Secondary Payer Recovery Contractor make an initial determination of the

conditional payment. 42 C.F.R. § 405.924(b)(14), (16). If the Medicare recipient

disagrees with the initial determination, that recipient may file a timely request for

reconsideration. *Id.* §§ 405.960–978. The reconsideration is conducted by a

Qualified Independent Contractor, who considers evidence submitted by the

recipient as well as information it gathers on its own. *Id.* § 405.968(a). The

Medicare recipient can then appeal that decision to an Administrative Law Judge

("ALJ"). *Id.* §§ 405.1000–1058. The Centers for Medicare and Medicaid Services

("CMS") or its contractor may participate by filing position papers or submitting

evidence or testimony. *Id.* §§ 405.1000(c), 405.1012. After the ALJ issues its

decision, an unsatisfied Medicare recipient may appeal the decision to the

Medicare Appeals Council ("Council"). *Id.* §§ 405.1100–1130. The Council

conducts de novo review of the record developed before the ALJ, *id.* §§ 405.1100,

405.1108, 405.1122(a), and then either adopts, modifies, or reverses the ALJ's

decision, *id.* § 405.1130. The Council's decision is the final decision of the

3

Secretary of Health and Human Services, *id.*, and is reviewable in federal district court, 42 U.S.C. §§ 1395ff(b)(1)(A), 405(g).

## II.    Factual Background

This dispute arises out of eleven group settlements Plaintiffs entered into with the State of Montana, Burlington Northern Santa Fe Railroad ("BNSF"), and BNSF's insurers ("CNA"), as the personal representatives of four Medicare beneficiaries who suffered asbestos-related injuries in Libby, Montana.  (Doc. 1 at ¶¶ 1, 2.)  Of the eleven, Plaintiffs present eight claims they classify as "wrongful death only" and three claims "combined" with survival claims:

|         | State of Montana    | CNA                          | BNSF                |
|---------|---------------------|------------------------------|---------------------|
| Kins    | Wrongful death only | Wrongful death with survival | Wrongful death only |
| Hagerty | Wrongful death only | Wrongful death with survival | Wrongful death only |
| Peltier | Wrongful death only | Wrongful death with survival | Wrongful death only |
| Wright  | Wrongful death only | Wrongful death only          | n/a (no recovery)   |

(Doc. 14 at ¶¶ 2, 5); *see* AR0017–18.  More accurately, however, all eleven releases include language—discussed in more detail below—addressing both survival and wrongful death claims.  But Plaintiffs argue that because the applicable statutes of limitations had run on eight of the beneficiaries' claims for medical damages prior to the settlements, they could not have recovered medical expenses in those eight releases.  *See* AR2090.  The remaining three claims against

4

CNA, however, appear to have been tolled, meaning these medical expense claims were potentially still viable at the time of settlement. *See* AR0062, 0084.

## A.    The Settlements

The record contains only a single copy of each release, between Kins and CNA, Kins and BNSF, and Wright and the State of Montana. While these indicate that the specific release language varies by tortfeasor, the Court can only assume the releases are the same for each plaintiff. *See* AR0019, 2017.

**State of Montana.** The language in the agreements with the State of Montana generally describes the agreement as covering "LIBBY MINE CLAIMS WHICH INCLUDE ALL LAWSUITS, CLAIMS AND CAUSES OF ACTION THAT HAVE BEEN, COULD HAVE BEEN, OR IN TH FUTURE COULD BE ASSERTED AGAINST RELEASEES." AR0052 (Wright agreement). The agreement then more specifically states:

> The undersigned Releasor acknowledges receipt of the above sum of money and in consideration for payment of such sum, fully and forever releases and discharges, and covenants not to sue Releasees, from Libby Mine Claims which are defined to include any and all actions, claims, causes of action, demands, losses or expenses for damages or injuries that have been, could have been, or in the future could be asserted against Releasees, whether asserted or unasserted, anticipated or unanticipated, known or unknown, foreseen or unforeseen, which arise out of or are in any way related to any actions, inactions, or omissions of Releasees relating to Zonolite Mining Company or W.R. Grace  Co. – Conn. or any of their predecessors, successors, related or affiliated entities, including but not limited to any federal or state constitutional, statutory or common law violations, responsibilities, duties, or obligations by or of Releasees and including

5

but not limited to bodily injury; personal injury; loss of consortium; loss of established course of life; pain and suffering; mental anguish; emotional distress; grief; loss of income; all claims or damages recoverable in any present or future survival action; all future consequences or diseases, even though now unanticipated, unexpected, unknown, undiagnosed or not yet developed or manifested; all claims arising out of the investigation, handling, adjusting, defense or settlement of the claims including, without limitation, any statutory, common law or other claims; and all actions, claims, causes of action, demands, losses or expenses for injuries, damages, losses, or expenses whatsoever in law or in equity which Releasor, Releasor's heirs, personal representatives, successors, assigns, or beneficiaries of Releasor have or may have in the future by reason of any matter whatsoever relating to the Libby Mine Claims.

AR0053. It further provides that the Releasor is to apportion payment "among doctors, hospitals, all other health care providers and services" and "agrees to promptly provide to Releasees all information required to meet Releasees' Medicare and Medicaid reporting requirements and obligations." AR0054.

**BNSF.** The agreements with BNSF state:

I, Larry Kins, being of more than 18 years of age and of sound mind, and being the personal representative of the estate of Lillian Kins (hereinafter, "DECEDENT"), attest and agree to the following RELEASE of all SUVIVORSHIP [sic] CLAIMS, WRONGFUL DEATH CLAIMS, and other CLAIMS (as defined below) against [the BNSF entities] pursuant to a Settlement Agreement dated June 5, 2012 reached with those RELEASED ENTITIES by my counsel (hereinafter "SETTLEMENT AGREEMENT"). . . . I execute this RELEASE solely in my capacity as personal representative of DECEDENT'S estate.
. . .

I, on behalf of DECEDENT, DECEDENT'S estate, and DECEDENT's spouse, children, heirs, executors, administrators, and successors and assigns, hereby fully release, acquit, and discharge [the BNSF entities], from any and all WRONGFUL DEATH CLAIMS, SUVIVORSHIP

[sic] CLAIMS, and other CLAIMS . . . arising from, or relating in any way whatsoever, in whole or in part, to (a) past, present or future (i) exposure by DECEDENT to asbestos or vermiculite, (ii) ASBESTOS-RELATED BODILY INJURY (as defined below) of DECEDENT and (iii) ASBESTOS-RELATED BODILY INJURY CLAIMS (as defined below) based upon DECENDENT's exposure to asbestos or vermiculite, and (b) the investigation, handling, defense, payment, trial, appeal or settlement of said WRONGFUL DEATH CLAIMS, SUVIVORSHIP [sic] CLAIMS, and ASBESTOS-RELATED BODILY INJURY CLAIMS.

AR0036–37 (Kins agreement).  The release further explains that it is

intended to be as broad and comprehensive as possible so that [the BNSF entities] shall never be liable, directly or indirectly, to me, in my capacity as personal representative of DECEDENT'S estate, or to DECEDENT, DECEDENT'S estate, or DECEDENT's spouse, children, beneficiaries, heirs, executors, administrators, successors, or assigns . . . for any CLAIM whatsoever, past, present or future, arising from or relating in any way, in whole or in part, to asbestos, vermiculite, ASBESTOS-RELATED BODILY INJURY of DECEDENT, or ASBESTOS-RELATED BODILY INJURY CLAIMS, WRONGFUL DEATH CLAIMS, SURVIVORSHIP CLAIMS or any other CLAIMS based upon, arising from or relating in any way to DECEDENT's exposure to asbestos or vermiculite.

AR0038.  The release then states a number of times, and in a number of ways, that payment "will be in full and complete satisfaction for all WRONGFUL DEATH CLAIMS, SURVIVORSHIP CLAIMS and other CLAIMS" against the BNSF entities.  *See* AR0039.  The release explicitly allocates 40% of the funds to the wrongful death claim and 60% "to the other CLAIMS released herein unless such other CLAIMS are barred by a statute of limitations or repose, in which event such payment shall be allocated one hundred percent (100%) to the WRONGFUL

7

DEATH CLAIM." AR0039. Finally, it states that "all payments allocated to the WRONGFUL DEATH CLAIM are for grief and sorrow, and loss of care, comfort and society suffered by DECEDENT'S heirs, and not for medical expenses incurred by DECEDENT during his/her lifetime." AR0039.

**CNA.** The CNA releases include language similar to the BNSF releases, releasing claims for bodily injury, wrongful death, and survivorship, AR0024, and apportioning between wrongful death (40%) and survivorship (60%), AR0025.

## B.   The Appeals Process

As a result of these settlements, the Department issued demand letters in March 2013, informing Plaintiffs that Medicare was entitled to recover conditional payments it made on behalf of the deceased beneficiaries pursuant to the Secondary Payer statute. AR0148–62 (Wright); AR0320–43 (Peltier); AR0481–96 (Hagerty); AR0666–78 (Kins). Plaintiffs disagreed, arguing that Medicare has no right to recover from settlement amounts paid on the wrongful death claims of the decedents' families. Plaintiffs therefore paid Medicare subject to a reservation of rights[1] and pursued the administrative process outlined above.

In August 2013, a Medicare initial contractor reviewed Plaintiffs' appeal of Medicare's initial determination, concluding that the releases were sufficient under

---

[1] $4,978.18 (Wright), AR1010; $19,893.79 (Peltier), AR1296; $14,745.03 (Kins), AR1647; $6,405.49 (Hagerty), AR1950.

the Secondary Payer statute to demonstrate Medicare's right to recover. *See*

AR0138–47.[2]  Plaintiffs sought further review, and in November 2013, the

Qualified Independent Contractor issued an unfavorable reconsideration. *See*

AR0132–37.  The Qualified Independent Contractor based her decision on

guidance provided by Chapter 7 of the Secondary Payer Manual, which provides:

> Wrongful death statutes are State laws that permit a person's survivors to assert the claims and rights that the decedent had at the time of death. These laws may include recovering for the deceased's medical expenses. When a liability insurance payment is made pursuant to a wrongful death action, Medicare may recover from the payment only if the State statute permits recovery of these medical expenses. Generally, if the statute permits recovery of the deceased's medical expenses, Medicare may pursue its payments, even if the action fails to explicitly request damages to cover medical expenses. Thus, in that event, even if the entire cause of action sets forth only the relatives and/or heirs damages and losses, then Medicare may still recover its payments.
>
> . . .
>
> NOTE: If a wrongful death statute does not permit recovering medical damages, Medicare has no claim to the wrongful death payments.

(Doc. 21-1 at 112, § 50.5.4.1.1.)  She concluded that because Montana's wrongful

death statutes do not prohibit a personal representative from recovering medical

expenses in a wrongful death action,[3] Medicare was entitled to recover those

expenses here.  AR0135.  In May 2014, Plaintiffs sought escalation to an ALJ or,

---

[2] Citations to a single plaintiff's administrative documents apply to all Plaintiffs unless indicated otherwise.

[3] This conclusion is imprecise as discussed in further detail below.

alternatively, for expedited access to judicial review. *See* AR0698. The request

for expedited review was denied on June 24, 2014, on the grounds that factual

disputes existed and an ALJ "might reach a different conclusion" than the

Qualified Independent Contractor regarding the interplay between the Secondary

Payer statute and Montana wrongful death law. *See* AR0705–06. The matter was

then remanded to the ALJ. AR0707.

The ALJ held a telephonic hearing on October 21, 2014. *See* Transcript,

AR2083–127. The only argument at the hearing was presented by Plaintiffs'

counsel and no witnesses were called. AR2087. Plaintiffs argued that the outcome

of the case was controlled by the Eleventh Circuit's decision in *Bradley v.*

*Sebelius*, 621 F.3d 1330 (11th Cir. 2010), AR2089, and that the ALJ was required

to recognize a November 13, 2013 state probate court order, which allocated the

settlement funds from the state releases in three of Plaintiffs' cases to wrongful

death only, AR2090; AR0068–74 (probate order). The ALJ inquired about

numerous omissions from the record, including, *inter alia*, the releases for each

plaintiff, the settlement amounts in each individual case, and the relevant

complaints against the tortfeasors. *See* AR0164. Plaintiffs agreed to supplement

the record with the missing materials. AR2126.

On November 14, 2014, the ALJ entered an unfavorable decision,

concluding that "the records do not establish that the settlements at issue did not

10

include medical expenses for injuries incurred by the beneficiaries." AR0170.

The ALJ's decision was heavily reliant on Plaintiffs' failure to provide requested

clarifying information. AR0164, 0165. In reaching his conclusion, the ALJ relied

on the language of the settlement agreements and inconsistencies in the evidence to

the contrary, which was limited to (1) the probate court order; (2) an attorney

affidavit; and (3) attorney-client letters discussing the running of the statute of

limitations on bodily injury claims. AR0169–70. The ALJ rejected all three as

unpersuasive, determining the contents of the attorney affidavit were inconsistent

with later admissions by counsel and the attorney-client letters were strangely

redacted, did not apply to all four cases, and, in one case, indicated that a bodily-

injury claim was not yet due. AR0169. As for the probate court order, the ALJ

concluded the court merely rubber-stamped an order drafted by Plaintiffs' counsel

with no independent consideration. AR0170. Thus, the order was not "on the

merits" as envisioned by the Medicare Secondary Payer Manual:

> In general, Medicare policy requires recovering payments from liability
> awards or settlements, whether the settlement arises from a personal
> injury action or a survivor action, without regard to how the settlement
> agreement stipulates disbursement should be made. That includes
> situations in which the settlements do not expressly include damages
> for medical expenses. Since liability payments are usually based on the
> injured or deceased person's medical expenses, liability payments are
> considered to have been made "with respect to" medical services
> related to the injury even when the settlement does not expressly
> include an amount for medical expenses. To the extent that Medicare
> has paid for such services, the law obligates Medicare to seek recovery
> of its payments. *The only situation in which Medicare recognizes*

11

> *allocations of liability payments to nonmedical losses is when payment is based on a court order on the merits of the case. If the court or other adjudicator of the merits specifically designate amounts that are for payment of pain and suffering or other amounts not related to medical services, Medicare will accept the Court's designation. Medicare does not seek recovery from portions of court awards that are designated as payment for losses other than medical services.*

(Doc. 21-1 at 97–98, § 50.4.4 (emphasis added).)

Following its ruling on the "wrongful death only" settlements, the ALJ made two further findings. First, as it relates to the three "combined" wrongful death and survival releases with CNA, the ALJ determined that in the Ninth Circuit, "Medicare's right to recovery is not limited by the equitable principal [sic] of apportionment." AR0171 (citing *Shalala*, 67 F.3d 841). Thus, the ALJ found no basis to reduce Medicare's recovery amount. *Id.* Second, the ALJ clarified that Plaintiffs did not seek a waiver of Medicare payments pursuant to § 1395gg. *Id.*

Plaintiffs sought further administrative review, *see* AR0015–16, and on July 17, 2019, the Council affirmed the ALJ's determination that Medicare was entitled to recover its conditional payments, AR0003–08. Reviewing the ALJ's decision de novo, 42 C.F.R. §§ 405.1100, 405.1108, the Council also highlighted Plaintiffs' failure to provide complete copies of the discovery and settlement documents in support of their claim. AR0005–06. The Council concluded that the explicit language of all three settlement agreements included bodily injury and medical expense claims, AR0006, and that the probate court order did not negate that

language as it post-dated the settlements, was prepared by counsel, and was issued without independent review, AR0007. The Council further rejected the Eleventh Circuit's *Bradley* decision as inapposite. *Id.*

## C.    The Present Action

Plaintiffs seek judicial review of the Council's decision and declaratory relief related to wrongful death recoveries under the Secondary Payer statute.[4] The Department filed a certified administrative record, (*see* Doc. 7), and the parties' cross-motions for summary judgment are ripe for determination, (*see* Docs. 10, 11, 20). A hearing on the motions was held on September 16, 2020.

## SUMMARY CONCLUSION

Plaintiffs argue that because the settlements at issue were for wrongful death claims only, which do not include medical expenses under Montana law, the proceeds are the property of the surviving children and spouses and are not subject to recovery under the Medicare Secondary Payer statute. As recognized by the ALJ and Council, were the facts in the record consistent with that proposition, Plaintiffs would likely be correct. However, the evidence does not support the facts as argued by Plaintiffs. The salient question in this case is not whether Medicare can recover from Montana wrongful death settlements, but whether

---

[4] Contrary to the many arguments from Plaintiffs at the September 16 hearing, this case does not involve a constitutional challenge.

13

substantial evidence supports the determination that the settlements at issue here

included medical expenses for injuries sustained by Medicare beneficiaries.

**LEGAL STANDARDS**

## I.   Summary Judgment

Under Rule 56(a) of the Federal Rules of Civil Procedure, a party is entitled

to summary judgment if it "shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Generally,

cases involving review of a final agency decision do not involve fact-finding but

only a deferential review of the administrative record. *Nw. Motorcycle Ass'n v.*

*U.S. Dep't of Agric.*, 18 F.3d 1468, 1472 (9th Cir. 1994).  Accordingly, summary

judgment is the appropriate vehicle to resolve this case.

## II.   Medicare Review

Though disputed by Plaintiffs, 42 U.S.C. § 405(g) provides "the sole avenue

for judicial review" for claims arising under the Medicare Act. *Heckler v. Ringer*,

466 U.S. 602, 614–15 (1984); 42 U.S.C. § 1359ii.  The term "arising under" is

broadly construed to encompass all claims for relief, regardless of whether the

claimant seeks benefits or declaratory or injunctive relief. *Heckler*, 466 U.S. at

615.  As a result, the Court's review is limited to that outlined in § 405(g): "[t]he

court shall have power to enter, upon the pleadings and transcript of the record, a

14

judgment affirming, modifying, or reversing the decision" of the Secretary, "with or without remanding the cause for a rehearing."

Review of the Secretary's decision is limited to two inquiries: (1) whether the Secretary applied the proper legal standards and (2) whether there is substantial evidence in the record to support the Secretary's decision. *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997). While an agency's interpretation of its governing statute as outlined in implementing regulations is reviewed under the deferential standard established in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984), *Zinman*, 67 F.3d at 844, an agency's internal manual is merely "entitled to respect" under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), and only to the extent its interpretations have the "power to persuade," *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe*, 108 F.3d at 980 (internal quotation marks omitted).

## III. Burden of Proof

The parties dispute who has the burden of proof in the Secondary Payer context. Plaintiffs argue Medicare has the burden to prove its right to recover conditional payments. The Department, on the other hand, insists that the burden is on Plaintiffs as the administrative appeals process does not even require the

15

Secretary's participation.  (*See* Doc. 28 at 5 (citing 42 C.F.R. §§ 405.1000(c),

405.1012, 405.1102(d)).)  Both parties are at least partially correct.

A beneficiary is required to reimburse the Secretary within sixty days of

receiving money from a primary plan.  42 C.F.R. § 411.24(h).  Thus, the initial

duty falls on Plaintiffs.  Recovery of the conditional payment is then appropriate

"if it is demonstrated that such primary plan has or had a responsibility to make

payment with respect" to an item or service.  42 U.S.C. § 1395y(b)(2)(B)(ii).

While the statute does not explicitly assign this burden to a particular party, it

seems to fall, at least initially, on the Secretary.  Put differently, once they have

notified Medicare of a settlement, Plaintiffs do not have the burden to show that

conditional payments *are not* warranted.  *C.f. Estate of Urso v. Thompson*, 309 F.

Supp. 2d 253, 260 (D. Conn. 2004) (finding that "Medicare bear[s] the ultimate

burden of justifying the amounts it seeks in reimbursement" but noting that the

plaintiff had provided records).  Here, the plain language of Plaintiffs' complaints

and releases—as discussed further below—was sufficient to demonstrate

Medicare's initial right to recover.

What is less clear is what burden Plaintiffs have, if any, to refute an

entitlement showing once made.  As argued by the Department, Plaintiffs have the

burden to litigate their opposition through the administrative appeals process.  And

both the ALJ and Council repeatedly highlighted and penalized Plaintiffs' failure

to submit requested documentation in support of their argument below. *See*
AR0169 (ALJ); AR0007 (Council). Going even further, the Council stated that
"[Plaintiffs] have not demonstrated by a preponderance of the evidence" first "that
the settlements with the State related only to wrongful death claims, AR0006, and
second "that Medicare's claims cannot be recovered from the liability settlements,"
AR0007. While the assignment of a preponderance standard to Plaintiffs is not
supported by either the statute or its implementing regulations, the ALJ and
Council ultimately concluded that the record evidence supported Medicare's
recovery of conditional payments, which is the correct standard under the law.
Plaintiffs' failure to contribute to that record can therefore be considered a lack of
contradictory evidence, not necessarily a failure to carry a burden. Either way this
Court reviews the Secretary's decision for substantial evidence.

**ANALYSIS**

**I.    "Wrongful Death Only" Claims**

For Medicare to recover under the Secondary Payer statute, Plaintiffs must
have a responsibility to pay medical expenses of the deceased beneficiaries. 42
U.S.C. § 1395y(b)(2)(B)(ii). Such responsibility "may be demonstrated by a
judgment, a payment conditioned upon the recipient's compromise, waiver, or
release . . . of payment for items or services included in a claim . . . ." *Id.* The
Department argues, and the Council concluded, that the group settlements at issue

17

here meet this requirement.  Plaintiffs, on the other hand, argue that they are not

Medicare beneficiaries and have recovered settlements solely related to the

damages owed to non-beneficiary spouses and children under Montana wrongful

death law.  (Doc. 11.)  Thus, they insist they are not "recipients" who have released

a "claim" for medical "items or services."

Resolving the present case requires an answer to the legal question of

whether Medicare can recover from a "wrongful death only" settlement under

Montana law and the factual question of whether the global settlements at issue

here are such settlements.  Also wrapped up in this inquiry, however, are the

practical challenges of obtaining a truly "wrongful death only" settlement.

### A.    Legal Question

Under Montana law, two distinct causes of action may arise from the

wrongful death of an individual.  The first is a "survival" claim, which includes all

claims personal to the decedent, such as pain, suffering, and medical expenses.

Mont. Code Ann. § 27–1–501(1).  The second is a "wrongful death" claim, which

covers the injury sustained by the decedent's family by the loss of the decedent's

care, comfort, and society.  Mont. Code Ann. § 27–1–513.  Both claims must be

"combined in one legal action" brought by the personal representative of the

decedent's estate, and "any element of damages may be recovered only once."

§ 27–1–501(2).  However, the damages remain distinct: "survival damages are

18

personal to the decedent but are pursued by her personal representative, while

wrongful death damages are personal to those who survive her." *Hern v. Safeco*

*Ins. Co. of Ill.*, 125 P.3d 597, 604–05 (Mont. 2005); *Payne v. Eighth Jud. Dist. Ct.*,

60 P.3d 469, 472–73 (Mont. 2002).  Survival damages include medical and funeral

expenses of the decedent, *Hern*, 125 P.3d at 604, but "do not include any damages

suffered by the decedent's widow, children or other heirs," *Swanson v. Champion*

*Int'l Corp.*, 646 P.2d 1166, 1169 (Mont. 1982).

Because Montana treats wrongful death claims and survival claims as two

distinct, independent causes of action, Plaintiffs are correct that, consistent with its

own internal guidance, (*see* Doc. 21-1 at 112, Manual § 50.5.4.1.1), Medicare

cannot recover conditional payments from Montana wrongful death settlements.

That conclusion was recognized by both the ALJ and Council.  *See* AR0168, 0005.

The determination is also congruous with the only court to have directly addressed

this issue.  In *Bradley*, a case heavily relied on by Plaintiffs, the Eleventh Circuit

held that Medicare was not entitled to recover conditional payments from a

beneficiary's surviving children's share of the proceeds in a wrongful death

settlement in Florida.  621 F.3d at 1337.  Florida, like Montana, distinguishes

between claims that belong to the estate and those that belong to the survivors:

> Under Florida law, any claim of the estate is separate and distinct from
> the claim of a survivor.  All loss of consortium or companionship
> recoveries are the property of the person who incurred the loss.  Not the

19

Secretary of [Health and Human Services].  A child's loss of parental companionship claim is a property right belonging to the child.  Not the Secretary of [Health and Human Services].  The Burke children's loss of parental companionship claims do not include the decedent's medical expenses, as a claim for medical expenses belongs only to the estate.  Only the estate's allocated share of the proceeds is subject to the province of the Secretary.

*Id.* (footnote omitted).  The challenge then is, as it was in *Bradley*, determining "[w]hose property is the settlement?"  *Id.*

### B.    Factual Question

As argued by the Department, there are three key moments in the underlying asbestos litigation that impact Medicare's ability to recover here: the initiation of the lawsuit and filing of complaints for damages; the signing of global settlements releasing those claims; and the post hoc allocation of the state probate court. Contrary to Plaintiffs' argument, the "wrongful death only" nature of the claims at issue here is not established by looking to any of these key events.

### 1.    Complaints

First, group complaints filed by Plaintiffs in the underlying asbestos cases included specific requests for medical expenses of the deceased.  *See* AR1623, 1636 (Kins – Apr. 29, 2009); AR1274, 1291 (Peltier – Aug. 31, 2010); AR0990, 1004 (Wright – July 13, 2006); AR0124, 0127–28 (Hagerty – July 29, 2010).[5]  As

---

[5] An "exhibit" attached to the complaint indicates that Hagerty's claims are "WD", or "wrongful death only," but it raises more questions than it answers because

the Sixth Circuit recognized, the scope of a plan's "'responsibility' for the beneficiary's medical expenses—and thus of his own obligation to reimburse Medicare—is ultimately defined by the scope of *his own claim against the third party*." *Hadden v. United States*, 661 F.3d 298, 302 (6th Cir. 2011).

### 2.    Releases

Second, the explicit language of the settlement releases shows that they address both wrongful death and survival claims. Plaintiffs conceded as much during the administrative process. *See* AR0061 ("The personal representative entered into these settlements releasing all claims, including any survival or wrongful death claims against the defendants in the above listed actions."); AR0087 (similar language). "[T]he fact of settlement alone, if it releases a tortfeasor from claims for medical expenses, is sufficient to demonstrate the beneficiary's obligation to reimburse Medicare." *Taransky v. Sec'y of U.S. Dep't of Health & Human Servs.*, 760 F.3d 307, 315 (3d Cir. 2014).

But, according to Plaintiffs, they could not pursue the survival claims in eight of the settlements because of the statute of limitations on those claims. AR2099–100. The record is mixed on this issue, raising both factual and practical questions. In support of their argument below, Plaintiffs presented a probate court

---

Hagerty's "consortium" column, which seems the most likely place a wrongful death beneficiary would be included, is empty. *See* AR0129.

order and an attorney affidavit supported by attorney-client letters. These are discussed in turn.

### 3.    Probate Court Order

On November 13, 2013, the Montana Nineteenth Judicial District Court, Lincoln County, entered a probate order concluding the group settlements for three of the plaintiffs (Hagerty, Wright, and Kins) were for "wrongful death only" because no survival claims could be brought against the tortfeasors in light of the statute of limitations. AR0069–73. The order recognizes the pending Medicare recovery action and states that the Secretary was provided notice and the opportunity to participate but did not do so. AR0071. The court did not take testimony or hear argument. *See* AR2098–99.

As mentioned above, Medicare's internal guidance provides that general liability expenses will be assumed to include medical expenses and

> [t]he only situation in which Medicare recognizes allocations of liability payments to nonmedical losses is when payment is based on a court order *on the merits* of the case. If the court or other adjudicator of the merits specifically designate amounts that are for payment of pain and suffering or other amounts not related to medical services, Medicare will accept the Court's designation. Medicare does not seek recovery from portions of court awards that are designated as payment for losses other than medical services.

(Doc. 21-1 at 97–98, § 50.4.4 (emphasis added).) The application of this guidance, while not binding, is "entitled to respect" to the extent it is persuasive.

22

*Christensen*, 529 U.S. at 587. "A court order is 'on the merits' when it is 'delivered after the court has heard and evaluated the evidence and the parties' substantive arguments.'" *Taransky*, 760 F.3d at 318 (citing *Black's Law Dictionary* 1199 (9th ed. 2009)). An order is not "on the merits" where it merely "rubber stamp[s]" an uncontested motion prepared and submitted by the movant's counsel. *Id.* at 318–19. Both the ALJ and the Council rejected the November 2013 probate court order as a "court order on the merits" because it was not argued in an adversarial setting, included only three of the four plaintiffs, and was drafted by Plaintiffs' counsel. AR0007 (Council); AR0170 (ALJ). The ALJ further indicated that the order "was not based on complete and accurate evidence" in light of counsel's later concession that "some of the settlement amounts were for asbestos-related bodily injuries including medical expenses." AR0170.

Plaintiffs return to *Bradley*, arguing that the Eleventh Circuit correctly determined that the Secretary was obligated to respect an allocation outlined in a similar probate order. But the facts of this probate order are distinguishable from the one in *Bradley*, where the state court "heard sworn testimony on the potential value" of the independent claims of the surviving children and "call[ed] on its own experience in the range of values each child's claim potentially carried." 621 F.3d at 1333; *see also Weiss v. Azar*, 2018 WL 6478025, at *10–11 (D. Md. Dec. 7,

2018).  Here, Plaintiffs concede that no argument took place and that the final order was prepared by their counsel.[6]  *See* AR2098–99.

As the Department notes, Plaintiffs did not seek the probate order until *after* the Medicare recovery process had begun.  Medicare's initial demand occurred in March 2013, *see e.g.*, AR0320, Plaintiffs appealed that decision in June 2013, *see e.g.*, AR0138, and that first appeal was denied in August 2013, *see e.g.*, *id.* Plaintiffs filed their motion in probate court on June 20, *see* AR0085, and the probate court issued its order on November 13, *see* AR0073.  To be sure, the probate hearing in *Bradley* also post-dated the Medicare action.  *See* 621 F.3d at 1333.  But that does not help Plaintiffs here because, with the knowledge of what transpired in *Bradley*, Plaintiffs had a clear picture of what was required in their probate proceeding to establish their wrongful death only claims.  As argued by the Department, the way the issues in this case were pled and settled showed that the claims had not evolved as Plaintiffs wanted them to and Plaintiffs' attempt to use the probate court to change this reality after the fact was ultimately unsuccessful.

Though Plaintiffs presented a reasoned motion to the probate court, *see* AR0075–85, the only factual basis presented in support of their statute of

---

[6] Some leniency on this point may be appropriate, however, as unopposed motions must be accompanied by a proposed order in the Montana Eleventh Judicial District.  *See* Mont. Eleventh Jud. Dist. Ct. Rule 3(A).

24

limitations argument was the same basis presented to and rejected by the ALJ and

Council: the attorney affidavit and attorney-client letters, *see* AR0084. Thus,

unlike *Bradley*, the Secretary did not solely rely on the conclusive language

contained in the internal guidance manual in rejecting the probate court's order.

*See* 621 F.3d at 1338–39. Nor do the attorney affidavit and attorney-client letters

provide a solid foundation for either the probate court order or Plaintiffs' case here.

### 4.   Attorney Affidavit and Attorney-Client Letters

Plaintiffs presented the probate court with an April 25, 2013 affidavit of Jon

L. Heberling, another attorney from the same firm as Plaintiffs' counsel in this

case. *See* AR0087–90. According to Mr. Heberling, even though the releases

include both survival and wrongful death claims, AR0087, they are "wrongful

death only" because of the applicable statute of limitations as conveyed to

Plaintiffs through the attached attorney-client letters, AR0088. The record then

contains 15 partially redacted attorney-client letters. *See* AR0091–105.

The ALJ and Council identified a number of problems with the affidavit and

letters. *See* AR0169–70. First, the affidavit indicates that all eleven settlements,

including the three "combined" settlement with CNA, are wrongful death only.

*See* AR0087. Plaintiffs have since conceded that those particular settlements

include personal injury claims. *See* AR0062 (McGarvey Aff.). Second, the

affidavit states: "While not all personal representatives participating in the group

25

settlements had filed litigation, any pleadings filed in any court and all settlement demands in cases and claims ultimately resolved as Wrongful Death Only Settlements were consistent with this absence of a survival claim and sought, instead, only a recovery for the heirs' loss of the 'care comfort [sic] and society' of the decedent." AR0089. As mentioned above, that representation is not entirely supported by the record as some group complaints contained specific requests for medical expenses of the deceased. Plaintiffs do not directly address these complaints. Rather, their briefing and statements at the September 16 hearing seem to contradict the complaints' plain text, stating, for example: "In the 'wrongful death only' claims described in this action, the personal representative did not plead a survival claim in litigation, or present a claim or demand on behalf of the estate[.]" (Doc. 12 at 19, 24.)

Plaintiffs also allude to the fact that the value of their settlements indicates they were for wrongful death only based on the data in the settlement grids that are commonly used in group settlements. (*See* Pls. SUF, Doc. 14 at 3.) However, the record does not contain the individual releases for each plaintiff, nor does it reference the values of those releases. As a result, the settlement amounts (and thus the implicit value of Plaintiffs' released claims) are unknown. Additionally, even if the amounts were known, the settlement grids were never court-approved as part of the settlements. *See* AR0019.

Finally, the attorney-client letters are independently unpersuasive.  Though

there are 15 letters in the record, none apply to Hagerty.  For the three other

plaintiffs, the representations regarding the applicable statutes of limitations are

undercut by Plaintiffs' complaints as discussed above.  *See* AR0098 (Kins – May

29, 2003); AR0100 (Peltier – July 3, 2012); AR0105 (Wright – May 11, 2004).  As

recognized by the ALJ, the letters are also strangely redacted and appear to

indicate some survival claims were possible.  *See* AR0169.  For example, the

Wright letter is dated two days before the statute was expected run and the portion

stating what actual claims were going to be filed on behalf of the decedent is

redacted.  *See* AR0105.

Nor do the letters address the possible tolling or later accrual of a claim and

the administrative record does not contain any medical records supporting

counsel's conclusions.  Under Montana law, the statute of limitations in each case

is factually dependent on the individual decedent and the onset of his or her

symptoms and diagnosis.  *See Kaeding v. W.R. Grace & Co.*, 961 P.2d 1256,

1259–60 (Mont. 1998).  Though the attorney-client letters show that Plaintiffs'

counsel may have believed no claims were timely in three of the four cases in light

of the information provided, that is by no means conclusive.  Nor is the fact that

such damages were determined untimely in other, unrelated cases.  *See*

AR0109–10 (jury instructions excluding survival damages in a separate case).

Whether time-barred or not, it appears that Plaintiffs pursued, and then released, possible claims for medical expenses. Plaintiffs, by entering the broad settlements at issue, forewent the opportunity to litigate the accrual of the decedents' claims absent a determination of those claims "on the merits." *Taransky*, 760 F.3d at 318; *see Hadden*, 661 F.3d at 302 (defining the scope of recovery by the scope of a claim). The ultimate success of those claims is not dispositive.

Accordingly, the Council's determinations that the probate order is not dispositive and that Medicare is entitled to recovery are supported by substantial evidence. To be sure, Plaintiffs faced an uphill battle in preventing Medicare from recovering from payments received as part of global settlements like the ones at issue here. But as recognized by both the ALJ and Council, Plaintiffs could have presented a record consistent with their "wrongful death only" position. This is simply not that record.

## II.    Settlements with Survival Claims

Plaintiffs concede that the CNA settlements with Kins, Hagerty, and Peltier are subject to Medicare's recovery, AR0019, but argue that recovery is limited by the percentage allocation, (Docs. 10, 24 at 24); AR0018.[7] This apportionment argument was rejected under an earlier version of the statute by the Ninth Circuit

---

[7] The BNSF releases also include a percentage allocation. Because the BNSF releases are not "wrongful death only" as discussed above, this analysis also applies to those releases.

in *Zinman*, 67 F.3d at 844–46, and that rejection was later reaffirmed under the newer statutory language by the Sixth Circuit in *Hadden*, 661 F.3d at 302.  Though the Ninth Circuit may want to revisit *Zinman* in light of the reasoning outlined in *Bradley*, *Zinman* is the current law.  Plaintiffs' apportionment argument is rejected.

## III.   Attorney Fees

Because Plaintiffs do not prevail on the merits, they are not entitled to attorney fees.  28 U.S.C. § 2412.

## CONCLUSION

Consistent with the above, IT IS ORDERED that Plaintiffs' motions for summary judgment (Docs. 10, 11) are DENIED and the Department's cross-motion (Doc. 20) is GRANTED.  The Clerk is directed to enter judgment consistent with this Order and close the case file.

DATED this 23rd day of September, 2020.

Donald W. Molloy, District Judge
United States District Court